[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this marital dissolution action, the parties disagree in regard to alimony, the distribution of assets, and the payment of fees. Based on the trial evidence, the court makes the following findings and orders.
The allegations of the complaint have been proven as true. Accordingly, a decree may enter dissolving the marriage on the basis that it has broken down irretrievably. The defendant is entitled to the restoration of her birth name, Sherry Clancy.
Mr. Rivers is fifty years old and in apparent good health. This is his third marriage. A college graduate, he is employed by the Hartford Insurance Group (Hartford) earning approximately ninety-seven thousand, six hundred ($97,600) dollars a year in a temporary assignment. Additionally, he recently received a bonus of eleven thousand, eight hundred ($11,800) dollars based on 1998 performance. Several months ago, the plaintiff's former position was eliminated. Unless he is able to find new employment within the next several weeks, he will be given a severance package from the Hartford equal thirty-one weeks pay, or approximately fifty-eight thousand ($58,000) dollars. He has had a number of interviews and his prospects for alternate employment appear good, though at a somewhat reduced level of compensation and responsibility. An employee of the Hartford since 1982, Mr. Rivers was earning approximately eighty-two thousand ($82,000) dollars annually at the time of the marriage. During the marriage, he was promoted into an executive position resulting in CT Page 3595 his eligibility to receive stock options and executive bonuses which have contributed to the improvement of his financial condition during the marriage. The plaintiff had a 401k account balance of approximately nine thousand, eight hundred ($9,800) dollars on December 31, 1993 shortly after the marriage.
Mrs. Rivers is forty-three years of age and in apparent good health. This is her second marriage. A high school graduate, she is employed by the Hartford, earning approximately forty thousand, four hundred ($40,400) dollars a year as a computer programmer. At the time of the marriage, she was earning approximately thirty-one thousand ($31,000) dollars a year at the Hartford. Through her employment, she participates in a 401k plan which had an account balance of six thousand, nine hundred ($6,900) dollars on December 31, 1993.
The parties first lived together prior to the marriage in a home located at 116 White Rock Drive in Windsor, Connecticut and owned by the plaintiff since 1983. While living at the White Rock residence, the parties expended between three and four thousand ($3,000-$4,000) dollars for improvements to the home prior to selling it in January, 1995. Mrs. Rivers contributed approximately one thousand ($1,000) dollars toward the costs of improvements. Mr. Rivers realized approximately thirteen thousand, six hundred ($13,600) dollars from the sale of White Rock, and utilized this sum as a down payment and to pay for expenses attendant to the parties move into their next residence, located at 17 Landing Circle, in Windsor.
The plaintiff purchased the Landing Circle property for one hundred and sixty thousand ($160,000) dollars, taking the property in his own name because, at the time, the defendant remained indebted in regard to obligations from her first marriage. In accordance with their stipulation, the present fair market value of the Landing Circle property is one hundred sixty-seven thousand ($167,000) dollars. Encumbered by a mortgage with a principal balance of one hundred forty-six thousand, eight hundred ($146,800) dollars, its gross equity is approximately twenty thousand ($20,000) dollars. The parties agree that the house should not be sold. They contemplate that the defendant will be relocating from the home in conjunction with this marital dissolution. While the parties have dwelt in this residence, they have both expended funds and energies enhancing the property.
During the marriage, the parties kept separate bank accounts CT Page 3596 into which they contributed most of their respective salaries and from which they made periodic withdrawals without consulting each other. They also made periodic withdrawals from their 410k accounts for their individual needs and without consultation. They filed joint tax returns and paid any taxes due in proportion to their respective incomes. They maintained a joint household account which was utilized to pay for miscellaneous household expenses.
In 1993, when the plaintiff's son Scot was arrested for a serious felony, the defendant contributed twenty-five hundred ($2,500) dollars toward his counsel fees. This was a kindness by the defendant. Similarly, when the defendant made a claim of discrimination against her employer, the plaintiff provided meaningful assistance and support to her.
The parties' marriage began to disassemble in 1994 with a loss of intimacy between them. When the plaintiff sought the assistance of a therapist to help him to deal with his sons's arrest and the growing chasm in the marriage, the defendant participated briefly but affected no genuine interest in the effort. At the same time, the defendant began to experience medical problems which continued throughout most of the marriage. Though the plaintiff was supportive of the defendant in regard to her medical issues, and he frequently attended medical appointments with her, over time she became withdrawn and excluded him from knowledge of her situation. In 1997, the parties again attended marital counseling, but it was unsuccessful. Communications between the parties became so strained that the defendant scheduled and had significant surgery without informing the plaintiff in advance. Though the parties remain in the same residence, they conduct separate lives and communicate with one another minimally.
The cause of the marital dissolution is the gradual and complete erosion of intimacy between the parties. In addition to the loss of human intimacy, it appears that the parties never achieved a financial partnership except for a limited sharing of household expenses and joint contributions toward the enhancement of the Landing Circle residence. So apart were the parties that in 1997 the defendant filed for personal bankruptcy without telling the plaintiff and utilizing another address on her petition so the plaintiff would not learn of this occurrence. With the exception of some sharing in regard to household expenses, the purchase of furniture and furnishings and CT Page 3597 improvements to their residence, the parties maintained completely separate financial lives.
Similarly, with the exception of assistance extended to the defendant by the plaintiff in regard to her claim against the Hartford, neither party assisted or impeded the other's careers during the marriage. The marriage appears to have had no impact on the parties' financial lives or conditions.
The defendant seeks alimony for a period of three years while the plaintiff does not believe he should be obligated to pay alimony. In concept, alimony is support due to one spouse from the other to fulfill a continuing duty of support. Passamano v.Passamano, 28 Conn. App. 854, reversed 228 Conn. 85 (1992). In this case, a review of the statutory criteria enumerated in Connecticut General Statutes 46b-82, coupled with the trial evidence, leads the court to a finding that no such duty exists. At the time of a marital dissolution, alimony does not have as its core purpose, without supporting factors, the equalization of spouses' incomes. The marriage had no impact on the earnings or earning capacity of either party. No events during the marriage caused by the plaintiff's conduct or lack contributed negatively to the defendant's earnings. Similarly, no activity on the part of the defendant contributed to the course of the plaintiff's employment during the marriage. The passage of time since the parties marriage is insufficient cause to generate an alimony obligation from one to the other. Nor, in this case, do the plaintiff's higher education and greater earnings entitle the defendant to support from him.
With respect to the division of assets, Mrs. Rivers seeks payment of twenty thousand ($20,000) dollars, which amounts to all the equity in the Landing Circle property, in addition to a sharing of the increase in the plaintiff's assets during the marriage. While, in testimony, she claimed that her entitlement to a share of the employment-related assets was based on the fact that the parties were married when the plaintiff received them, such an outcome, if premised on the basis stated, would violate Connecticut's view that marriage alone does not entitle one spouse to an ownership interest in the assets of the other. Cf. C.G.S. 46b-36. However, the defendant's actual contributions to the Landing Circle property combined with her lesser education and earnings coupled with the plaintiff's greater earnings, earning capacity and ability to acquire assets in the future entitle the defendant to a distribution of assets. Accordingly, CT Page 3598 as a property distribution pursuant to C.G.S. 46b-81, the plaintiff is ordered to pay to the defendant the sum ten thousand ($10,000) dollars within thirty days. In addition, the plaintiff shall cause a transfer of fifteen thousand ($15,000) dollars by way of a Qualified Domestic Relations Order from his Hartford 410k to an IRA account in the defendant's name within seventy-five days of this Memorandum. To effectuate this order, the defendant shall provide the plaintiff with the name of the financial institution and IRA account number into which the transfer should be made within thirty days of this Memorandum.
With respect to personal property, each of the parties has submitted a list of what he and she seeks to retain. The plaintiff shall be entitled to retain ownership of all the furniture and furnishings in the home except for the following items which shall become the property of the defendant: all property listed by the plaintiff on Schedule B of his proposed orders and the dryer.
Except as otherwise noted, the parties shall each be entitled to exclusive ownership of the assets listed on their respective financial affidavits, and each shall be liable and hold the other harmless for the debts listed on their respective financial affidavits. The defendant shall vacate the Landing Circle property within thirty days of this Memorandum.
No award of counsel fees is made to either party.
Counsel for the plaintiff shall prepare the judgment file.
Bishop, J.